UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMIE DELGADO,

                                        Plaintiff,

                                                                DECISION AND ORDER

                                                                15-CV-6417L

                        v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,


                                        Defendant.
_____

        Plaintiff appeals from a denial of supplemental security income benefits by the

Commissioner of Social Security ("the Commissioner").  The action is one brought pursuant to

42 U.S.C. § 405(g) to review the Commissioner's final determination.

        On October 25, 2010, plaintiff, then twenty-two years old, filed an application for a

period of disability and disability insurance benefits, and an application for Supplemental

Security Income benefits under Title II of the Social Security Act.  On November 17, 2010,

claimant filed an application for child's insurance benefits.  In all three applications, plaintiff

alleged an inability to work since December 21, 2007.  (Administrative Transcript, Dkt. #8-2 at

9).  Her applications were initially denied.  Plaintiff requested a hearing on all three denials,

which was held on May 16, 2013 before Administrative Law Judge ("ALJ") Brian Kane.  The

ALJ issued a decision on May 29, 2013, concluding that plaintiff was not disabled under the

Social Security Act.  (Dkt. #8-2 at 9-19).  That decision became the final decision of the

Commissioner when the Appeals Council denied review on May 20, 2015.  (Dkt. #8-2 at 2-4).  Plaintiff now appeals from that decision.  The plaintiff has moved (Dkt. #10), and the Commissioner has cross moved (Dkt. #12) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c).  For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed.


## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  *See* 20 CFR §§404.1509, 404.1520.  If the ALJ concludes that the claimant is not engaged in substantial gainful employment and suffers from a severe impairment, the ALJ examines whether the claimant's impairment meets or equals the criteria of those listed in Appendix 1 of Subpart P of Regulation No. 4.  If the impairment does so, and has continued for the required duration, the claimant is disabled.  If not, analysis proceeds and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 CFR §404.1520(e), (f).  If the claimant's RFC permits her to perform relevant jobs she has done in the past, she is not disabled.  If not, analysis proceeds to the final step, and the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of her

age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)).  *See also* 20 CFR §404.1560(c).

The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.  *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997)).  Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The ALJ summarized plaintiff's medical records, with particular emphasis on her treatment for anxiety disorder and depressive disorder, which he concluded together constituted a severe impairment not meeting or equaling a listed impairment.  I believe the evidence supports the ALJ's findings concerning plaintiff's nonexertional limitations, and that the ALJ's failure to incorporate *verbatim* his hearing question to the ALJ in reiterating plaintiff's RFC in his decision was harmless error.

When it comes to nonexertional limitations, in addition to the usual five-step analysis, the regulations "require application of a 'special technique' at the second and third steps of the five-step framework." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant is found to have a medically determinable mental impairment, the ALJ must assess the claimant's degree of resulting limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 CFR §404.1520a(c)(3). If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document his analysis, and his written decision must "reflect application of the technique, and . . . 'include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Kohler*, 546 F.3d 260 at 266, *quoting* 20 CFR §404.1520a(e)(2).

Here, the ALJ found that the plaintiff was mildly restricted in activities of daily living, moderately restricted in social functioning, moderately restricted with regard to concentration, persistence and pace, and had experienced no episodes of decompensation. He determined that plaintiff could perform work at all exertional levels, with a non-exertional limitation restricting her to work that required no more than "two hours of attention and concentration." (Dkt. #8-2 at 13). In so finding, the ALJ gave "little weight" to the opinions of plaintiff's treating therapists, social worker Erin Carlson ("Carlson") and mental health counselor Melanie Cottone ("Cottone"), and treating psychiatric nurse practitioner, Kathleen Calnan ("Calnan"). Carlson and Calnan had both opined that plaintiff had "moderately severe" impairments in social functioning and some areas of concentration, persistence or pace, and Cottone had stated that plaintiff was frequently hospitalized for medical reasons, and occasionally hospitalized for psychiatric reasons. The ALJ noted that none of these opinions found factual support in the

4

record and that each was put forth by an individual who was not an "acceptable medical source" for purposes of the treating physician rule.  Furthermore, these assessments conflicted with their authors' own treatment records as well as plaintiff's self-reported activities of daily living, which included timely and successful engagement in a two-year secondary degree program (Associate in Arts from the Medical Assistant Program at the Everest Institute, achieving the Dean's list) and managing her household and caring for her two children as a single parent.  During this period, symptoms such as panic attacks and anxiety occurred occasionally and in direct correlation to periods of noncompliance with plaintiff's treatment regimen of therapy and medication.

I find that the ALJ's characterization of plaintiff's treatment records and activities of daily living is well supported by the record, and that the ALJ thus provided sufficient reasons for rejecting the opinions of plaintiff's treating therapists and nurse concerning her mental RFC.

The plaintiff also argues that the ALJ's RFC finding, as set forth in his decision, is inconsistent with the hypothetical he posed to vocational expert Peter Manzi ("Manzi") at the hearing, and that the ALJ's reliance in his decision on Manzi's answer (that jobs existed in the national economy which a person with that RFC could perform) was misplaced.  Specifically, the ALJ's decision describes plaintiff's RFC as including the ability to perform "work requiring two hours of attention and concentration," while the ALJ's hypothetical to Mr. Manzi at the hearing concerned an individual who could maintain attention and concentration for up to "two hour periods . . . [t]wo hour stretches . . . [a]t a time").   (Dkt. #8-2 at 66).  Plaintiff argues that the ALJ's reference in his decision to plaintiff's ability to concentrate for "two hours" does not sufficiently mirror his question at the hearing, because the phrase "two hours of attention and concentration" might be interpreted to refer to plaintiff's ability to concentrate over an *entire*

*workday* total, as opposed to her ability to concentrate for multiple two-hour "periods" or "stretches" over the course of a single workday.

The Court disagrees.  While the ALJ's description of plaintiff's RFC does not perfectly mirror his hearing question to Mr. Manzi, any ambiguity as to whether the ALJ's reference to concentration for "two hours" meant two hours *at a time* (the subject of his hearing question to Manzi) or two hours *total* (which would represent a totally new finding about which Manzi was never questioned) is easily resolved by reference to its context within the ALJ's decision. The decision's reference to "two hours" was clearly meant to refer to the same two hour "periods" about which he questioned Manzi at the hearing, since after finding that plaintiff can perform work requiring concentration for up to "two hours," the ALJ's decision immediately goes on to state that he had "asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's . . . residual functional capacity," and then lists the jobs identified by Manzi in answer to his question at the hearing concerning concentration for "two hour . . . periods." (Dkt. #8-2 at 17).

Plaintiff also argues that the ALJ's finding that plaintiff could concentrate for up to two hours at a time was not supported by evidence of record, since the only medical opinion in which the ALJ placed "significant" reliance, that of examining psychologist Christine Jean-Jacques ("Jean-Jacques"), did not provide a specific time frame, but stated only that plaintiff would have "some difficulty maintaining attention and concentration over long periods of time." (Dkt. #8-7 at 152).  Initially, Dr. Jean-Jacques' failure to specify "some difficulty" in terms of duration does not render her opinion impermissibly vague.  *See e.g.*, *Rosenbauer v. Astrue*, 2014 U.S. Dist. LEXIS 117519 at *42 (W.D.N.Y. 2014) ("the use of phrases such as 'moderate' or 'mild' by a consultative examiner does not automatically render the opinion impermissibly vague")

(collecting cases).  Dr. Jean-Jacques' opinion was based on her own in-person examination of the plaintiff, in which she noted that plaintiff's attention and concentration were only "mildly" impaired "as a result of emotional distress," (Dkt. #8-7 at 151), and on her review of plaintiff's psychiatric history (including one hospitalization related to a panic attack), outpatient mental health treatment history (therapy once per week, and medication), and medical history (with hospitalizations for childbirth and two minor surgeries).  Accordingly, Dr. Jean-Jacques' opinion that plaintiff would have "some difficulty" or "mild" limitation with respect to attention and concentration was based upon medical examination, evaluation and observation, and the ALJ properly relied upon it to support his RFC assessment.  In fact, that ALJ's assessment appropriately incorporates a greater extent of limitation than a draconian, *verbatim* application of the verbiage used by Dr. Jean-Jacques ("mild") might yield, and assesses plaintiff's attention and concentration difficulties as falling into the "moderate" range.  *See Dier v. Colvin*, 2014 U.S. Dist. LEXIS 88332 at *10-*11 ("when, as here, [the physician's opinions] are based on clinical findings and an examination of the claimant, the conclusion can serve as an adequate basis for the ALJ's ultimate conclusion").

Furthermore, while Dr. Jean-Jacques did not specify a duration for which plaintiff could be expected to maintain attention and concentration, the ALJ's finding that plaintiff is unlimited in her ability to maintain attention and concentration for at least two straight hours is consistent with his finding (which was itself, supported by substantial evidence, as discussed above) that plaintiff's limitations in that arena are "moderate."  *See Miller v. Colvin*, 2015 U.S. Dist. LEXIS 39274 at *40) (W.D.N.Y. 2015) ("the ALJ specifically incorporated [moderate attention and concentration limitations] into his RFC assessment by incorporating the limitation that [claimant]

could only sustain attention and concentration for up to two hours at a time") (quoting *Buscemi v. Colvin*, 2014 U.S. Dist. LEXIS 134827 at *37 (W.D.N.Y. 2014)).

I have considered the rest of the plaintiff's claims, and find them to be without merit.

CONCLUSION

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not based on legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #10) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #12) is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        December 22, 2016.